Aviation Manufacturing Corporation v. Commissioner.
Aviation Mfg. Corp. v. Commissioner
Docket No. 754.
United States Tax Court
1944 Tax Ct. Memo LEXIS 323; 3 T.C.M. (CCH) 255; T.C.M. (RIA) 44089; March 22, 1944
*323 In November 1939 petitioner, a corporation, caused to be organized a new corporation with an authorized capital stock of 1,000,000 shares of the par value of $1 per share. The directors of the new corporation authorized an original issue of 787,500 shares of its authorized capital stock. On November 14, 1939, petitioner transferred substantially less than all of its assets to such new corporation in exchange for 450,000 shares of the latter's stock and realized a gain thereby. The new corporation reserved for option and sale to its officers 37,500 shares at $10 per share and on January 12, 1940, sold and issued 300,000 shares of its capital stock to underwriters at $8.50 per share. All of the acts and transactions above detailed occurred pursuant to an integrated plan agreed upon between petitioner and the new corporation. Between November 14, 1939 and January 12, 1940, petitioner and/or its sole stockholder, a corporation, owned all of the new corporation's then issued and outstanding stock. Petitioner contends that there was a corporate reorganization to which it was a party and that under section 112(b)(4) of the Revenue Act of 1938 the gain realized by it as above indicated *324 is not recognized for tax purposes. Held, that there was no reorganization within the meaning of section 112(g)(1) of the Revenue Act of 1938 as amended by section 213(g) of the Revenue Act of 1939, and that, therefore, section 112(b)(4) does not apply and that the gain arising from the exchange of assets for stock is recognized for tax purposes. W. A. Mogensen (an officer), for the petitioner. R. B. Hertzog, Esq., for the respondent. HILL Memorandum Opinion HILL, Judge: This proceeding involves an income tax deficiency for petitioner's fiscal year ended November 30, 1939, in the amount of $49,861.86. The tax return for that year was filed on an accrual basis with the collector of the Third district of New York. The facts are stipulated and are found accordingly. [The Facts] Petitioner is a Delaware corporation with its principal office in New York City. It is wholly owned by The Aviation Corporation. In 1939 a plan was devised whereby a new corporation which petitioner caused to be organized was to acquire all the property and assets and going business of petitioner's Vultee Aircraft Division. The plan embraced several distinct steps which were accomplished in order as *325 follows: The new corporation, Vultee Aircraft, Inc., was incorporated under the laws of Delaware on November 14, 1939, with authorized capital stock of 1,000,000 shares of the par value of $1 each. On the same day petitioner sold to Vultee Aircraft, Inc., the assets of its Vultee Aircraft Division, being substantially less than all its assets, and received in payment therefor 450,000 shares of the new corporation's capital stock. Petitioner sold 350,000 of such shares to The Aviation Corporation on November 30, 1939, at $8.50 per share and the latter agreed to accept the remaining 100,000 shares in payment of dividends. On January 12, 1940, Vultee Aircraft, Inc., sold and issued 300,000 shares of its capital stock to underwriters at $8.50 per share, the intent being that the underwriters should resell the stock to the public. Warrants were issued to the underwriters by The Aviation Corporation to purchase for $10 each 100,000 of the shares which it had acquired from petitioner. Vultee Aircraft, Inc., also authorized the reservation and option for sale of 37,500 shares of capital stock to its present and future officers. Thus, the total number of shares which it authorized to be issued *326 as an original issue was 787,500. There is no dispute between the parties as to the amount of gain realized by petitioner on the sale of its assets. The sole question is whether such gain is to be recognized. Section 112(b)(4) of the Revenue Act of 1938 provides that no gain shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock in another corporation a party to the reorganization. To bring into play this nonrecognition provision there must occur a reorganization falling within one of the definitions thereof set forth in section 112(g)(1), and so petitioner acknowledges. For this purpose it relies upon the literal terms of section 112(g) (1) (C) of the Revenue Act of 1938 as amended by section 213(g) of the 1939 Act, together with section 112(h), which are as follows: SEC. 112. RECOGNITION OF GAIN OR LOSS. * * * * *
(g) Definition of Reorganization. - As used in this section and section 113 - (1) The term "reorganization" means * * * (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders *327 or both are in control of the corporation to which the assets are transferred, * * * * *
(h) Definition of Control. - As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation. While admitting that the whole plan envisaged the original issue of 787,500 shares of the transferee's stock, petitioner contends that the transfer here comes within the ambit of the quoted sections of the statute since petitioner and its stockholder owned at least 80 per cent of the transferee's outstanding stock from November 14, 1939, the date the assets were transferred, until January 12, 1940 when 300,000 shares were sold to underwriters. Were we to shut our eyes to the object which the reorganization provisions of the statute are intended to accomplish, the literal terms of the subsection upon which petitioner relies might warrant our sustaining his position. However, we would not be justified in disregarding the patent intent and purpose of a statute in interpreting its *328 meaning as applied to a given state of facts. Regulations 101, Art. 112(g)-1, applicable to the vear in question, contain a fair statement of both the purpose behind the exceptions to the general rule requiring an accounting of gain or loss upon the exchange of property and the manner of their application. The statement is as follows: * * * The purpose of the reorganization provisions of the Act is to except from the general rule certain specincally described exchanges incident to such readjustments of corporate structures, made in one of the particular ways specified in the Act, as are required by business exigencies, and which effect only a readjustment of continuing interests in property under modified corporate forms. * * * In order to exclude transactions not intended to be included, the specifications of the reorganization provisions of the law are precise. Both the terms of the specifications and their underlying assumptions and purposes must be satisfied in order to entitle the taxpayer to the benefit of the exception from the general rule. * * * It is not contended that the purpose of the plan here effectuated was the simple readjustment of petitioner's or its parent's *329 interests in the Vultee Division assets under modified corporate form with the continuance of the requisite control. Rather, the plan sought the introduction of a substantial amount of new capital and a corresponding reduction in the former owner's proportionate interests, one which would result in less than an 80 per cent ownership. The whole plan obviously was outside the type of transaction which section 12(g)(1) was meant to cover. The fact that at one point in the proceeding petitioner or its stockholder did own all the then outstanding stock of the transferee corporation is not compliance with sections 112(g)(1)(C) and (h). For income tax purposes, the component steps of a single transaction can not be treated separately. ; ; , affirmed . The question of control is to be determined by the situation existing at the time of the completion of the plan. ; *330 ; ; . When the transaction, including therein the several successive steps, was finally consummated, The Aviation Corporation, petitioner's stockholder, owned not over 450,000 shares of the transferee corporation's authorized original issue of 787,500 shares of capital stock. This was substantially less than the required control as defined by section 112(h). Hence, there was no reorganization within the meaning of section 112(g)(1)(C) as would invoke the operation of section 112(b)(4). Decision will be entered for respondent.